## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **WALTER RC STAMPER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:12-0568** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following Motions: (1) The United States' "Motion to Dismiss for Failure to State a Claim (Document No. 7.), filed on April 9, 2012; and (2) Plaintiff's letter-form Motion to Dismiss (Document No. 17.), filed on July 19, 2012. Having thoroughly examined the record in this case, the undersigned finds that the United States' Motion to Dismiss for Failure to State a Claim (Document No. 7.), should be granted and Plaintiff's Motion to Dismiss (Document No. 17.) should be denied as moot.

### PROCEDURAL BACKGROUND

On February 27, 2012, Plaintiff, acing *pro se* and formerly an inmate at FCI Beckley, filed his Complaint in this matter claiming entitlement to relief pursuant to Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*[1] (Document No. 1.) Plaintiff names the United States as the Defendant. (Id.) Plaintiff paid the $350.00 filing fee on February 27, 2012. (Document No. 1-2.)

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Plaintiff alleges that in 2009, the Chief Physician at FCI Beckley consulted with Dr. White, an outside surgeon, regarding Plaintiff's medical treatment. (Id., p. 2.) Plaintiff contends that "[o]n or about March 1, 2009, or April 1, 2009, Dr. White, pursuant to the foregoing contract with the United States, removed a kidney-sized tumor from the Plaintiff's back." (Id.) Plaintiff states that the tumor was melanoma, which is a "rapidly-spreading cancer." (Id., pp. 2 - 3.) Plaintiff claims that "[s]ubsequent to the rendition of the diagnosis of melanoma, the Plaintiff was advised by the Chief Physician of FCI Beckley that a second surgery would be undertaken immediately to cut a deeper, wider, and longer incision than the first surgery to foreclose the possibility and probability of drainage and spread of the melanoma to the Plaintiff's lymph nodes." (Id., p. 4.) Plaintiff states, however, that the "Chief Physician and staff officers, agents, and employees of the BOP, commenced a series of postponements of appointments with the original surgeon, Dr. White, characterized by haphazard, reckless changes in schedules by the Lieutenant's Office at FCI Beckley and rescheduling of appointments to a later date." (Id., p. 5.) Plaintiff explains that he was "transported to Beckley Hospital . . . on two occasions between approximately May 2009, and December 2009, at which times the appointments were rescheduled to a later date without any actions or surgeries performed by Dr. White." (Id.) Plaintiff asserts that he was then transported to another surgeon's office for a consultation, but the surgeon "refused to consummate an agreement to perform the surgery on the basis that too much time had elapsed since the performance of the first surgery, and that the melanoma had almost certainly spread to the Plaintiff's lymph nodes and possibly other critical parts of the body, such as the lungs, liver, brain, or pancreas." (Id., pp. 5 - 6.) Plaintiff contends that a PET Scan was conducted in January 2010, which revealed the "presence of cancer in Plaintiff's lymph nodes in the armpit of the right arm." (Id., p. 6.) Plaintiff was

2

transferred to Butner Federal Medical Center on or about January 27, 2010. (Id.) Plaintiff states that "[p]hysicians at Butner Federal Medical Center performed an operation or surgery on or about April 1, 2010, which entailed the second surgery to Plaintiff's back and the removal of about three lymph nodes from his right armpit." (Id.) Plaintiff claims that the "[l]aboratory analysis of the lymph nodes removed from the Plaintiff's armpit revealed that the lymph nodes contained melanoma" and interferon treatment commenced on May 1, 2010. (Id., p. 6.) Plaintiff alleges that he underwent interferon treatments for a period of 12 months. (Id., p. 7.) Plaintiff explains that the "interferon treatment was extremely problematic because of Plaintiff's pre-existing bipolar illness, causing extraordinary depression and extraordinary side-effects with the interferon." (Id., pp. 6 - 7.) Plaintiff contends that he had to cease interferon treatment twice due to the side-effects. (Id.) Plaintiff acknowledges that a PET Scan conducted on October 14, 2011, revealed that the melanoma had went into remission. (Id., p. 7.) Plaintiff alleges that "there is about a forty percent probability that the melanoma contracted by Plaintiff will reappear in the future in the Plaintiff's liver, lungs, brain, or pancreas." (Id.) Based on the foregoing, Plaintiff alleges that "the United States of America, through its officers, agents, and employees, working within the scope of their employment, committed negligence and negligence per se by carelessly, recklessly, and negligently, failing to perform a second operation to the back of the Plaintiff within a reasonable time, exhibiting deliberate indifference to the serious medical needs of the Plaintiff, which reasonable time is defined as 30 days by administrative protocol and written rules and regulations." (Id., pp. 7 - 8.) Plaintiff argues it was "entirely foreseeable . . . that the failure to timely conduct a second operation of the back would result in harm to the Plaintiff, specifically, the suffering represented by lymph node cancer and the potential spread thereof to other vital parts of the body." (Id., p. 8.) As relief, Plaintiff

requests monetary damages. (Id., pp. 9 - 10.)

By Order entered on March 23, 2012, the Court directed the Clerk to issue process in this case by preparing and serving a Summons and a copy of Plaintiff's Complaint upon the United States as specified in Rule 4(i)(1) of the Federal Rules of Civil Procedure. (Document No. 3.) On April 9, 2012, the United States filed a Motion to Dismiss Complaint for Failure to State a Claim and Memorandum in Support. (Document Nos. 7 and 8.) The United States argues that Plaintiff's Complaint should be dismissed because Plaintiff failed to provide a screening certificate of merit as required by the Medical Professional Liability Act [MPLA]. (Id.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4ᵗʰ Cir. 1975), was issued to Plaintiff on April 10, 2012, advising him of the right to file a response to the United States' Motion to Dismiss. (Document No. 9.)

On May 3, 2012, Plaintiff filed a "Motion for Extension of Time within which to File an Amended Complaint Without Leave of Court and Reply to Responsive Pleadings." (Document No. 10.) Plaintiff explains that he is having difficulty obtaining a copy of his medical records. (Id., pp. 2 - 5.) Plaintiff, therefore, requests an extension of time to file a Response to the United States' Motion to Dismiss. (Id., pp. 2 - 4, 6.) Plaintiff further requests an extension of time to file an Amended Complaint. (Id., pp. 3 - 6.) Plaintiff explains that he "always knew he would need to retain a medical expert for use in the current litigation, although he was unaware of the pleading requirement." (Id., p. 3.) Plaintiff states that he "immediately had his family in the free world commence an attempt to locate and retain a medical expert who would review his medical records and pleadings and provide a Certificate of Merit, if he opined favorably to the records and pleadings, in ample time to enable the filing of an amended complaint as a matter of course." (Id.) Plaintiff claims that his daughter "has located a litigation service which will provide an expert witness

4

qualified to execute a Certificate of Merit. . . . The service requires an initial retainer of $2,600, which plaintiff's daughter . . . will pay immediately once the medical records become available." (Id., p. 4.) Thus, Plaintiff states that he "wishes to amend his complaint to allege that a medical expert has completed a Certificate of Merit and that the certificate is attached to the pleading, but he cannot procure the certificate until the expert witness is able to review both records and pleadings." (Id., pp. 4 - 5.)

As Exhibits, Plaintiff attaches the following: (1) A copy of an e-mail from Medical Records to Plaintiff dated March 20, 2012, regarding Plaintiff's request for medical records (Id., p. 9.); (2) A copy of an e-mail from Plaintiff to Medical Records dated April 10, 2012 (Id., p. 10.); (3) A copy of an e-mail from Medical Records to Plaintiff dated April 19, 2012 (Id., p. 11.); (4) A copy of an "attempt at Informal Resolution" dated January 31, 2012 (Id., pp. 12 - 13.); (5) A copy of Plaintiff's Request for Administrative Remedy dated April 18, 2012 (Id., pp. 14 - 15.); and (6) A copy of a letter to the United States Postmaster from Plaintiff dated March 1, 2012 (Id., pp. 16 - 17.)

By Order entered on June 14, 2012, the undersigned granted in part and denied in part Plaintiff's "Motion for Extension of Time within which to File an Amended Complaint Without Leave of Court and Reply to Responsive Pleadings." (Document No. 13.) Specifically, the undersigned denied Plaintiff's Motion for Extension of Time to Amend Complaint and granted his Motion for Extension of Time to File a Response. (Id.)On July 3, 2012, Plaintiff filed his objections to the undersigned's Order denying his Motion to Amend Complaint. (Document No. 16.)

On July 19, 2012, Plaintiff filed his Motion to Dismiss and Response to the "United States' Motion to Dismiss Pursuant to Rule 12(b)(6)." (Document No. 17.) Specifically, Plaintiff states that "I must advise you at this juncture that the nature of the expert evidence has caused my emphases

to take a strange turn, and I must be straight forward and honest with the court and counsel and concede to the United States' motion to dismiss without prejudice." (Id., p. 1.) Plaintiff states that "[t]he anomalous, extraordinary pathology of my melanoma precluded the expert oncologist whom I retained at great expense from rendering an expert medical opinion concluding that the government breached the applicable standard of care." (Id.)

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## DISCUSSION

In its Motion to Dismiss, the United States contends that Plaintiff's claim should be dismissed because he failed to provide the required Certificate of Merit. (Document Nos. 7 and 8.)

In Response, Plaintiff states that "I must be straight forward and honest with the court and counsel and concede to the United States' motion to dismiss without prejudice." (Document No. 16.)

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). As stated above, the FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

In the present case, Plaintiff alleges that Defendant's negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not

7

require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." <u>Id.</u> at 858.

Unlike the facts in <u>Johnson</u>, Plaintiff's allegations of medical negligence are complex and expert testimony is necessary. <u>See O'Neil v. United States</u>, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience). In the instant case, Plaintiff alleges that medical staff provided untimely and inadequate medical treatment for his melanoma. (Document No. 1.) Plaintiff further contends that medical staff's delay in providing a second surgery resulted in him suffering "lymph node cancer and the potential spread thereof to other vital parts of the body." (<u>Id.</u>, p. 8.) Expert testimony is necessary to support any finding that the medical treatment provided by the staff at FCI Beckley fell below the applicable standard of care. The undersigned finds that the symptoms, methods of prevention, and proper treatment options for melanoma are not within the understanding of lay jurors by resort to

common knowledge and experience.[2] Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). The undersigned, therefore, recommends that the United States' "Motion to Dismiss for Failure to State a Claim" (Document No. 7.) be granted and Plaintiff's Motion to Dismiss (Document No. 17.) be denied as moot.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** the United States' "Motion to Dismiss for Failure to State a Claim (Document No. 7.), **DENY as moot** Plaintiff's letter-form Motion to Dismiss (Document No. 17.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

---

[2] Plaintiff does not dispute that expert testimony is necessary. (Document Nos. 10 and 17.) In his Motion for Extension of Time, Plaintiff stated that he "always knew he would need to retain a medical expert for use in the current litigation, although he was unaware of the pleading requirement." (Document No. 10, p. 3.)

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985);

Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94

(4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this

Magistrate Judge.

      The Clerk is requested to send a copy of this Proposed Findings and Recommendation to

Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

      Date: January 15, 2013.

R. Clarke VanDervort
United States Magistrate Judge